R. Anthony Young (SBN 202473)
tyoung@cylgpc.com
Christopher A. Young (SBN 231938)
cyoung@cylgpc.com
**CYLG, P.C.**
1901 Avenue of the Stars, Suite 200
Los Angeles, California 90067
Telephone: 310.620.2274
Facsimile: 888.620.7886

Attorneys for Plaintiff
EDWARD FLEMING

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD FLEMING, an individual, <br><br> Plaintiff, <br><br> v. <br><br> DAVID BROWN a/k/a DAVID BROWN LEVY a/k/a DAVID RAYMOND BROWN, an individual; SCREENFUND LLC, a Delaware limited liability company; and THE SCREEN COMPANY, INC., a Delaware corporation; and DOES 1-20 INCLUSIVE, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br> **(1) BREACH OF FIDUCIARY DUTY;** <br> **(2) CONVERSION;** <br> **(3) BREACH OF OPERATING AGREEMENT;** <br> **(4) UNJUST ENRICHMENT; AND** <br> **(5) ACCOUNTING** |

Plaintiff Edward Fleming ("Plaintiff") hereby files this Complaint against Defendants David Brown a/k/a David Brown Levy a/k/a David Raymond Brown; ScreenFund LLC; and The Screen Company, Inc. (collectively, "Defendants"), and alleges as follows:

**THE PARTIES**

1.  Plaintiff Edward Fleming ("Fleming") is an individual and citizen of Colorado with his domicile in Golden, Colorado. Fleming is the sole member of Red Junior, LLC, a Colorado limited liability company.

2.  Defendant David Brown a/k/a David Brown Levy a/k/a David Raymond Brown ("Brown" or "Defendant Brown") is an individual and citizen of South Carolina with his domicile in West Columbia, South Carolina. Brown and Fleming are Co-Managers and the only two Members of Film Holdings Capital LLC ("FHC"), a California limited liability company.

3.  Defendant ScreenFund LLC ("ScreenFund") is a Delaware limited liability company. ScreenFund is the finance arm and affiliate of The Screen Company, Inc., and Defendant Brown is the sole member of ScreenFund LLC.

4.  Defendant The Screen Company, Inc. ("The Screen Company") is a Delaware corporation, with its principal place of business in Los Angeles, California.

**JURISDICTION AND VENUE**

5.  Plaintiff Edward Fleming is a citizen of the United States whose domicile is in the state of Colorado.

6.  Defendant David Brown is a citizen of the United States whose domicile is in the state of South Carolina.

7.  Defendant ScreenFund is a citizen of South Carolina.

8.  Defendant The Screen Company is a Delaware corporation and a citizen of Delaware and California.

9.  This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. Section 1332 because the parties are citizens of different states in complete diversity and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

---

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING
AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

10.     This Court has personal jurisdiction over Defendants Brown, ScreenFund, and The Screen Company, and each of them, because a substantial part of the events or omissions giving rise to the claims herein took place in this District; Defendants have purposefully availed themselves of the privilege of conducting business in California and within this District; and Defendants engaged in conduct giving rise to Plaintiff's claims within this District. This Court has personal jurisdiction over Defendant Brown for the additional reason that the parties to the FHC Operating Agreement expressly agreed "to submit to the jurisdiction of the state and federal courts located in California . . . ." Operating Agreement, § 8.9.

11.     Venue is proper in the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in or were directed to the Central District of California, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS COMMON TO ALL CLAIMS

12.     On or about January 15, 2024, Fleming was introduced to Brown by a mutual business acquaintance.

13.     Brown represented to Fleming that he was a successful movie producer and heavily involved in the movie-lending business.

14.     Brown sought Fleming's investment dollars to help fund a business enterprise through which the two, through a jointly owned entity, would provide bridge loans to various movie projects, and realize significant rates of returns on Fleming's (and allegedly Brown's) investment dollars.

15.     Brown represented to Fleming that he would be able to leverage his significant contacts within the entertainment industry, as well as significant investment dollars that, along with Fleming's investment dollars, would fund

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING
AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

3

1    millions of dollars in prospective loans.

2    16.    At the time, Fleming was unaware, and Brown never disclosed, that

3    Brown had been involved in numerous lawsuits in which he had been the subject of

4    allegations or had been found liable for fraud (or fraud-related claims).

5    17.    Had Brown disclosed this information to Fleming, Fleming would never

6    have agreed to invest anything or engage in any business with Brown.

7    18.    As it was, by March 1, 2024, Brown had convinced Fleming to enter

8    into a business venture with Brown under the name of Film Holdings Capital LLC

9    ("FHC" or the "Company"). FHC was formed for the stated purpose of sourcing and

10    providing bridge loans, tax credit loans, cash rebate loans, senior loans, presale and

11    minimum guarantee loans, gap loans and mezzanine loans in the entertainment

12    industry.

13    19.    Brown and Fleming formed FHC, a California limited liability

14    company, on March 1, 2024. Brown and Fleming were the only members and co-

15    managers of FHC.

16    20.    Under FHC's Operating Agreement, Brown and Fleming had joint

17    management responsibilities with authority to "[j]ointly or with written approval by

18    both Members, bind the Company and make any decisions regarding the Company's

19    business and affairs."

20    21.    Their stated business plan was for Brown to use his extensive personal

21    connections within the entertainment industry to identify and procure bridge loan

22    opportunities (and other similar types of loan products) for FHC to then fund various

23    film projects that needed temporary funds until they could procure more long-term,

24    traditional loans.

25    22.    Under their agreement, Brown and Fleming, through the use of his

26    solely-owned investment company, Red Junior, LLC ("Red Junior"), were to receive

27

28

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

revenues for each loan transaction undertaken in amounts proportionate to their capital contributions. The example used in the Operating Agreement to clarify the spirit of their agreement is that if Fleming were to contribute $600,000 and Brown contributed $400,000 to fund a loan, "then the revenue will be prorated entirely based off their actual monetary contribution," *i.e.*, Fleming would receive 60% and Brown would receive 40% of the net proceeds of that loan.

23.    Brown established a bank account for FHC at JPMorgan Chase ("Chase Bank"). Brown established the bank account with himself as the sole individual with access to, and control over, the account.

24.    Brown provided wiring instruction for the FHC Chase Bank account to Fleming and Fleming's assistant, Ms. Amanda Mitchell (who has functioned as the day-to-day operator of Red Junior since its inception), so that Red Junior could begin investing in loans procured by Brown.

25.    Pursuant to the Operating Agreement, Fleming made an initial capital contribution of $325,000.00 to FHC on March 1, 2024, and proceeded to contribute more than $5 million by March 15, 2024 as prompted by Defendant Brown. Fleming made capital contributions between March 1, 2024 and December 20, 2024 in the total amount of $11,324,540.00.

26.    Unbeknownst to Fleming, on March 26, 2024, Defendant unilaterally, and without authorization, filed a "Statement of Information" with the Secretary of State, changing the Manager and Member of FHC from Fleming and Defendant Brown to Film Holdings Fund Partners LLC, a limited liability company Defendant Brown had formed a year earlier.

27.    This was an improper and invalid action as amendments to the Operating Agreement of FHC (including changing members or managers) can only be done "by the Members, or by the Manager(s) upon written approval of both Members" pursuant

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

5

1    to its terms.

2    28.    Knowing he had made this unauthorized change to FHC's governing

3    documents, Brown continued to operate as though there was no such change. He

4    continued to represent investment opportunities to Fleming and asked for wire

5    transfers to be delivered by Ms. Mitchell.

6    29.    As noted above, over $11.3 million was requested by Brown and sent

7    by Fleming under the guise of investment opportunities that would result in large

8    returns and that were protected, secured and insured against loss.

9    30.    These representations were false in nearly every respect.

10    31.    Upon information and belief, many (if not all) of the documents

11    presented to Fleming and Ms. Mitchell by Brown were either fabricated, forged or

12    falsified to induce Fleming to continue to invest his funds into FHC.

13    32.    Over the course of 2024, Brown instructed Ms. Mitchell to wire transfer

14    funds into at least four (4) different banks under entity names that he represented

15    were co-owned by Fleming *or* were just temporarily being used until he could

16    complete the process of setting up accounts with a lender that was purportedly

17    offering FHC better credit terms.

18    33.    These representations were false.

19    34.    Nevertheless, Ms. Mitchell wired funds from Red Junior's bank account

20    to accounts identified by Brown and held in JPMorganChase Bank ("Chase"),

21    Western Alliance Bank ("Western Alliance"), First Citizens Bank ("First Citizens")

22    and Choice Financial Bank ("Choice").

23    35.    As it turns out, many of those accounts were held under the name of

24    entities Fleming was not aware existed at the time, such as: The Screen Company,

25    Inc., and ScreenFund LLC, for example.

26    36.    Brown represented to Fleming that FHC would be using the d/b/a of

27

28

_____

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING
AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

"ScreenFund." Fleming did not know that Brown had previously formed, in his own name as the sole member and manager, a limited liability company named ScreenFund LLC.

37.    Recently, when confronted about Fleming's discovery of the entity named ScreenFund, LLC, Brown represented to Fleming that FHC owned ScreenFund LLC and that Fleming and Brown were 50/50 owners of ScreenFund LLC.

38.    Those representations were false.

39.    Given that some of Fleming's funds were wired to and/or funneled through ScreenFund LLC, Fleming asked Brown to provide bank records for ScreenFund, but Brown has refused to produce such records. Instead, Brown asserts that because Fleming is not a member under the Operating Agreement of ScreenFund, LLC, Brown has no obligation to produce those bank records.

40.    In addition to the foregoing, Plaintiff has asked Brown, on numerous occasions, to provide the financial records and bank statements that show where Fleming's funds were deposited, and when/to where they had been distributed or deployed.

41.    To date, Brown has not provided these bank records or financial records and Fleming remains unaware of where or to whom his funds have been distributed under the guise of funding loans (that appear now to have been fabricated in whole or part).

42.    On January 15, 2025, Defendant Brown represented to Fleming that FHC had $681,000.00 "on hand" that Brown wanted to redeploy.

43.    At that point in time, Fleming contributed over $11.3 million, and had received $0 in return from Brown, despite Brown's representations of extraordinary returns and significant cash flow coming in to FHC.

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

7

44. Accordingly, Fleming asked for Brown to send him the "on hand" funds as a partial payment toward the net returns Fleming was owed.

45. Instead of delivering the funds to Fleming, Defendant Brown told Fleming that he had already promised those funds (without Fleming's authorization as is required by the Operating Agreement) to be deployed for an alleged new loan and was being threatened by the prospective borrowers' attorney. He begged Fleming to allow him to redeploy those funds for this alleged new loan instead of returning the funds to Plaintiff.

46. Upon information and belief, there was no new valid loan, the funds were not "on hand" and Brown was once again just making up excuses to hide Fleming's money from Fleming.

47. To induce Fleming to agree to his *not* sending those funds to Fleming, Brown stated that FHC had a significant loan repayment coming in on February 7, 2025 ($1 million) and another on February 14, 2025 ($1.5 million), from which he would send Fleming the funds he needed for other (unrelated) business.

48. Based on those (false) representations by Brown, Fleming reluctantly agreed to allow his share of those particular proceeds to be (allegedly) redeployed.

49. As the February 7, 2025 repayment date neared, Defendant Brown represented that the $1 million loan proceeds had actually been wired by the borrower, and received by FHC on February 3, 2025.

50. Brown sent Fleming screen shots of text messages as his proof that the wire transfer from FHC's client had been initiated on February 3, 2025.

51. On February 7, 2025, Defendant Brown represented to Fleming that "[FHC] got the $ around 4:30om today. I teed it up for you, it will not process until business hours Monday [February 10, 2025]."

52. Brown also followed up on February 10, 2025 that he had, in fact, wired

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

8

1   $625,000 to Fleming. This representation was false.

2        53.    To date, those funds have never been wired to Fleming.

3        54.    On or about February 20, 2025, Defendant Brown told Fleming that he

4   would wire Fleming $625,000 from FHC's Western Alliance account on February

5   20, 2025.

6        55.    After several more days (and no wired funds), Defendant Brown then

7   told Fleming that he had gone to Western Alliance Bank personally and actually *had*

8   a $625,000 cashier's check for Fleming *in hand* that he would immediately be

9   sending to Plaintiff.

10       56.    On February 25, 2025, and after many requests for photographic proof

11  of this alleged cashier's check, Defendant Brown admitted that he had lied to

12  Fleming about having the cashier's check in hand, (texting to Fleming: "The truth

13  is, I've not gotten the cashier check yet….").

14       57.    Instead, Brown said that Western Alliance Bank had *mailed* the

15  cashier's check to him – which he expected to show up in his mail very soon. Of

16  course, to date, Fleming has still never even seen a *photo* of the cashier's check, let

17  alone received it.

18       58.    As recently as March 3, 2025, Brown texted Fleming saying that he had

19  the funds in hand, and that he would speak with his legal counsel about whether to

20  send that to Fleming.

21       59.    Recently, Fleming discovered an article published in the Los Angeles

22  Times on May 16, 2023, that had a photo of Defendant Brown in the title page, and

23  which described a lengthy history of fraud, theft and racketeering allegations and

24  claims made against Brown.

25       60.    The L.A. Times article describes, in depth, the instances of fraudulent

26  activity with which Defendant Brown has been involved, spanning decades of

27

28  COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

fraudulent activity involving the funding of film projects, loan agreements, forgery of signatures (including the forging of actor Kevin Spacey's signature in at least one instance), at least one bankruptcy case in which Defendant Brown filed for bankruptcy protection under the name "David Brown Levy," and an explanation that Defendant Brown (who now frequently goes by David R. Brown or David Raymond Brown) was originally named David Addison Brown.

61.    It is unknown to Fleming how many aliases Defendant Brown uses, or has used, but they appear to be numerous.

62.    As are the number of various companies Defendant Brown has created (most, if not all, appear to have been involved in his fraudulent schemes) and the dozens of bank accounts that he has, or is, operating across the country in furtherance of his fraudulent schemes.

63.    Through Plaintiff's counsel's investigations, it appears that many of the representations Defendant Brown has made to Fleming about the alleged loans, FHC, ScreenFund, the alleged clients of FHC, and about how and to where Fleming's money was being used was false.

64.    Fleming has requested and demanded bank statements from Defendant Brown and his companies, including Defendants ScreenFund and The Screen Company, relating to FHC and ScreenFund, which are required to be maintained and made available to Fleming under both the Operating Agreement and California law, but Brown refuses to produce those bank records.

65.    Defendant Brown sent an e-mail to Plaintiff's counsel informing him that, while he agrees Fleming is a 50/50 owner in ScreenFund, LLC, Fleming was never actually named on the Operating Agreement for that entity and, therefore, Brown would not voluntarily produce any bank statements for that entity.

66.    When asked for bank records from First Citizens Bank (to which

---

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

Fleming's funds were delivered to an account held in the name of FHC), Brown ignored that request and refuses to produce those bank records.

67.    When asked for the Western Alliance bank records, Defendant Brown represented to that Western Alliance does not provide bank statements online, rather, Western Alliance was physically mailing those records to Defendant Brown and he would produce them at that time.

68.    That representation was false. Western Alliance – as virtually every other bank – *does* provide 24/7 access to all account statements, as clearly advertised on their website.

69.    More recently, Defendant Brown has alleged that at least three bank accounts he opened at Western Alliance were involuntarily closed by Western Alliance.

70.    Based upon information and belief, Defendant Brown has either fabricated and/or forged many, if not all, of the supposed loan documents sent to Fleming.

71.    Brown is repeatedly and intentionally violating the terms of FHC's Operating Agreement to buy more time for himself while refusing to produce bank records and financial statements to Fleming.

72.    Defendant Brown's actions and communications over the past year relating to FHC's supposed business operations, closely match the course of conduct for which he has engaged – and been found liable – in numerous court cases across the country and as described in the May 16, 2023 L.A. Time article.

73.    Fleming, through his investment company Red Junior, LLC, has funded more than $11.3 million to Defendant Brown that appears to have been used by Defendant Brown to pay off settlements in other fraud cases, to fund loans or false loans for ScreenFund and/or The Screen Company (as lenders or producers) that

---

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

11

either do not exist and/or do match the terms he represented to Fleming at the time funds were sent, and have now been completely dissipated to locations that Fleming cannot currently track (including to or through ScreenFund LLC and The Screen Company, Inc.) because Brown refuses to produce any bank records or financial statements for FHC or any of these other companies, to which Fleming's funds were wired.

74.    When confronted with the lack of production of documents (that are needed for both business and tax reasons), Brown gaslit Fleming and argued that he actually *has* provided everything, and they are already in Fleming's possession. This is false, as Brown has produced virtually nothing that is actually required to be maintained and produced by him.

75.    Brown continues to present Fleming with the same, self-serving, unauthenticated and/or unsigned Word documents or spreadsheets and screenshots of documents that do not actually provide *any* confirmable, reliable or usable information.

76.    To date, Brown has produced no record or documents that authentically demonstrate proof of real clients, real loans, distribution of FHC or Fleming funds, returns made on these alleged loans, the actual cash flow of FHC, of ScreenFund, The Screen Company, or anything else that is required to be maintained and produced by Brown under the Operating Agreement and by the California Corporations Code.

77.    Fleming has now lost nearly his entire life savings to Brown's deception, yet Brown continues to send Fleming near-daily text messages or phone calls in an attempt to dissuade Fleming (through veiled threats or false promises to fix things and return Fleming's investment) from seeking relief from the Court.

78.    Brown recently (March 3, 2025) sent a text message of images of nearly

---

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

a dozen different bank accounts (supposedly each owned by Brown) to Fleming in an effort to prove that Brown had little or no money in any of his bank accounts.

79.    The texted screenshots are evidence that Brown is unable to satisfy any monetary judgment that could be entered against him in a court of law, let alone the more than $11.3 million of Fleming's missing funds.

80.    By March 11, 2025, however, Brown changed his story to suggest that he was going to fund a *new* loan for FHC (apparently to a party that previously sued Brown, and obtained a judgment against him, on claims of theft, wire fraud and racketeering, among others). Brown did not explain how he can come into sufficient capital to fund this new loan or share any evidence of such funds.

## **FIRST CLAIM FOR RELIEF**

(Breach of Fiduciary Duty)

81.    Plaintiff incorporates by reference all of the preceding and following paragraphs as though fully set forth herein.

82.    Defendant Brown, as a member and co-manager of FHC, owed a fiduciary duty to Fleming and to FHC.

83.    Defendant Brown violated those fiduciary duties by, among other things: changing the members and managers of FHC on file with the California Secretary of State without Fleming's knowledge or consent; forming and utilizing entities controlled only by Defendant Brown for purposes of misappropriating and disseminating Fleming's capital contributions to FHC; forging documents; fabricating documents; misrepresenting to Fleming that loan proceeds had been received and would be wired or mailed to him imminently while disseminating the funds elsewhere; misleading Fleming about the status of repayment of loan proceeds; modifying the terms of loans provided by FHC without the knowledge or consent of Fleming; opening alternative bank accounts to receive wires and send Fleming's funds through entities controlled only by

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

13

Defendant Brown, and for purposes of obscuring bank transactions from Fleming; and refusing to make FHC's books and records available to Fleming or provide information about deployment of Fleming's contributions.

84.    Defendant Brown's actions and misappropriation of funds belonging to Fleming have directly caused significant financial loss suffered by Fleming. To date, Fleming has received $0 of his $11,324,540.00 invested into FHC.

85.    As a direct and proximate result of Defendant Brown's breach of fiduciary duties owed to Fleming, Fleming has been damaged in an amount to be determined according to proof, but which exceeds $11,000,000.

86.    Fleming prays for relief following his Fifth Claim For Relief, below.

## SECOND CLAIM FOR RELIEF

(Conversion)

87.    Plaintiff incorporates by reference all of the preceding and following paragraphs as though fully set forth herein.

88.    Plaintiff has ownership over the funds distributed to Brown, ScreenFund and/or The Screen Company under false pretenses, in the total amount of $11,324,540.

89.    Plaintiff has ownership of or the right to possess those funds, along with all bank statements that are in the possession and control of Defendants and which reflect (among other things) the receipt, use of and distribution or deployment of Fleming's funds and/or any funds that were used, or allegedly used, in connection with loans that Fleming intended to be extended by FHC.

90.    Defendants exercised unauthorized dominion and control over Fleming's funds when they distributed them without authorization, re-deployed them without authorization, and/or refused to remit to Fleming the principal or proceeds of loan transactions.

91.    Plaintiff has demanded the return of his funds from Defendants along with

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

14

the production of these bank account records, statements and other financial records of FHC.

92.     Defendants refuse to return Plaintiff's funds and to produce the bank records, statements and other financial records of FHC or that would otherwise demonstrate the use of Fleming's funds.

93.     Fleming prays for relief following his Fifth Claim For Relief, below.

### THIRD CLAIM FOR RELIEF

(Breach of Operating Agreement)

94.     Plaintiff incorporates by reference all of the preceding and following paragraphs as though fully set forth herein.

95.     The parties' Operating Agreement for FHC is a binding and enforceable contract between the parties.

96.     Fleming has performed all terms, covenants and conditions on his part to be performed pursuant to the Operating Agreement, except those terms, covenants or conditions excused or made impossible by the breaches alleged herein.

97.     Brown has breached the Operating by, among other things, "adopting one or more fictitious business names for the Company [e.g., ScreenFund, The Screen Company, and/or Film Holdings Fund Partners, LLC] with[out] the written approval of both Members," pursuant to Section 1.2; taking numerous actions and made numerous decisions regarding the Company's business and affairs without joint authority or written approval of both Members as required by Section 3.1; failing to compile or maintain complete and accurate books and records for FHC as he is required to do under Section 4.1; failing and refusing to distribute revenues from loan transactions as they become available as required by Section 8.15, misappropriating Fleming's funds, refusing to produce FHC and ScreenFund bank account records, directly competing with FHC, and by refusing to produce all financial records of FHC, ScreenFund, and The Screen

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

15

1  Company, each allegedly used as a d/b/a for FHC..

2      98.   As a direct and proximate result of Brown's breach of the Operating

3  Agreement, Fleming has been damaged in an amount to be determined according to

4  proof, but which exceeds $11,324,540.00.

5      99.   Fleming prays for relief following his Fifth Claim For Relief, below.

6  **FOURTH CLAIM FOR RELIEF**

7  (Unjust Enrichment)

8      100.   Plaintiff incorporates by reference all of the preceding paragraphs as though

9  fully set forth herein.

10      101.   Defendants have received and retained, under false pretenses, the total

11  amount of $11,324,540 of Fleming's funds, along with any revenues, interest or proceeds

12  generated by those funds at the expense of Fleming.

13      102.   Both ScreenFund and The Screen Company received Fleming's funds

14  under false or improper pretenses.

15      103.   Defendants have admitted, through their manager/owner Defendant Brown,

16  that they received those funds , but have failed or refused to return those monies to

17  Fleming.

18      104.   Plaintiff suffered a corresponding deprivation as a result, and there is no

19  legal justification for Defendants' retention of the benefit of Plaintiff's funds.

20      105.   Fleming prays for relief following his Fifth Claim For Relief, below.

21  **FIFTH CLAIM FOR RELIEF**

22  (Accounting)

23      106.   Plaintiff incorporates by reference all of the preceding paragraphs as though

24  fully set forth herein.

25      107.   A relationship exists between Fleming and Brown that requires an

26  accounting of FHC's business records, financial records, tax records and bank

27

28

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

16

1    records/statements.

2        108.   Per the terms of the FHC Operating Agreement, Brown was charged with

3    the day to day operations of FHC, including the record keeping.

4        109.   Brown has sole access to the financial and bank records of FHC,

5    ScreenFund, and The Screen Company, but refuses to deliver relevant records to

6    Fleming, as required by the Operating Agreement and the California Corporations Code.

7        110.   Money is owed to Fleming, but he is unable to determine the amount so

8    owed without an accounting.

9                              **PRAYER FOR RELIEF**

10        WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in

11    his favor and against Defendants, and award him all relief as allowed by law and equity,

12    including, but not limited to the following:

13        1.     All appropriate relief at law and equity;

14        2.     Preliminary and permanent injunctive relief;

15        3.     Actual economic damages as established at trial;

16        4.     Compensatory damages;

17        5.     Issuance of an Order mandating appropriate equitable relief;

18        6.     Pre-judgment and post-judgment interest at the highest lawful rate; and

19

20

21

22

23

24

25

26

27

28    COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

7.     Such further relief as justice requires.

Respectfully submitted, this the 12th day of March, 2025.

**CYLG, P.C.**

*/s/ R. Anthony Young*
R. Anthony Young
CYLG, P.C.
1901 Avenue of the Stars
Suite 200
Los Angeles, California 90067
Telephone:  310.620.2274

*Attorneys for Plaintiff*
*Edward Fleming*

COMPLAINT FOR: (1) BREACH OF FIDUCIARY DUTY; (2) CONVERSION; (3) BREACH OF OPERATING
AGREEMENT; (4) UNJUST ENRICHMENT; AND (5) ACCOUNTING

18